# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 22, 2009          Decided July 16, 2010

No. 09-5065

IN RE: ANY AND ALL FUNDS OR OTHER ASSETS, IN BROWN
BROTHERS HARRIMAN & CO. ACCOUNT #8870792 IN THE
NAME OF TIGER EYE INVESTMENTS LTD., ET AL.,

UNITED STATES OF AMERICA,
APPELLANT

v.

OPPORTUNITY FUND AND TIGER EYE INVESTMENTS, LTD.,
APPELLEES

———

Consolidated with 09-5164, 09-5190

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:08-mc-00807-JDB)

———

*Jean B. Weld*, Attorney, U.S. Department of Justice, argued the cause for appellant. With her on the briefs were *Linda M. Samuel* and *Daniel H. Claman*, Attorneys. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

*Kelly B. Kramer* argued the cause for appellee Opportunity Fund. With him on the brief were *Anjali Chaturvedi* and *Lara Levinson.*

*Andrew C. Lourie* argued the cause for appellee Tiger Eye Investments, Ltd. With him on the brief was *Michael S. Kim*.

Before: ROGERS, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: The U.S. Government seeks a court order under 28 U.S.C. § 2467(d)(3) to freeze the assets of individuals and entities who are the subjects of an ongoing criminal investigation by the Brazilian government for possible violations of Brazilian law.

Before entering the fog of statutory analysis, it is important to carefully identify the power being asserted here. The U.S. Government is claiming authority under 28 U.S.C. § 2467(d)(3) – a provision enacted into law in 2001 – to freeze a person's assets for a period that could be years, including the assets of U.S. citizens, (i) based solely on a foreign official's allegation that the owner of the assets violated that country's law, (ii) *before* any foreign court has decided whether the owner of the assets is actually guilty of a legal violation, and (iii) without any right for the owner of the assets to obtain substantive judicial review in a U.S. court of the basis for the freeze order, even just for probable cause that the owner committed an offense.

The precise statutory question we must decide is whether property may be frozen under § 2467(d)(3) only *after* a foreign court has entered a forfeiture judgment, as the District Court concluded, or also may be frozen even *before* any such foreign court forfeiture judgment, as the Government posits. Like the District Court, we interpret the statute to mean that a U.S. court may freeze assets under § 2467(d)(3) only *after* a foreign court's forfeiture judgment.

In so ruling, we make two points clear up front. First, the Government has expressly acknowledged that the statutory authority it claims here is not used in national security matters, presumably because a variety of other statutes give the Government power to freeze and forfeit property for national security reasons. Second, this case does not involve or affect the U.S. Government's ability to freeze or forfeit assets for alleged or proved violations *of U.S. law*. This case concerns only whether § 2467(d)(3) grants the U.S. Government the power to freeze assets based solely on a foreign official's allegation of a violation of that country's law, and before any foreign court has adjudicated the matter.

I

In late 2008, the government of Brazil submitted a formal request for assistance under the Treaty Between the Government of the United States of America and the Government of the Federative Republic of Brazil on Mutual Legal Assistance in Criminal Matters, U.S.-Braz., Oct. 14, 1997, S. TREATY DOC. NO. 105-42 (1998). The Brazilian authorities asked the United States to freeze (i) accounts held by the Opportunity Fund, a Cayman Islands investment fund, at UBS AG in Connecticut, and (ii) an account held by Tiger

Eye Investments, Ltd. at Brown Brothers Harriman & Co. in New York.

The affidavit accompanying the Brazilian request alleged, based on an ongoing Brazilian criminal investigation, that Daniel and Veronica Dantas had perpetrated a scheme to defraud the Brazilian financial system, engage in insider trading, and launder the proceeds of those crimes. Many of those activities, the affidavit stated, were carried out through the Opportunity Fund and Tiger Eye Investments.

In late 2008 and early 2009, based on information contained in the affidavit, the United States Department of Justice filed a series of applications in the U.S. District Court for the District of Columbia for restraining orders against accounts held by the Opportunity Fund and Tiger Eye. As authority for its applications, the Government cited 28 U.S.C. § 2467(d)(3), which authorizes a district court to issue "a restraining order pursuant to section 983(j) of title 18" in order to "preserve the availability of property subject to a foreign forfeiture or confiscation judgment." 28 U.S.C. § 2467(d)(3)(A).

As relevant to the substantive issue presented here, the District Court ultimately concluded in two decisions – one in March 2009 and one in May 2009 – that § 2467(d)(3) did not authorize it to issue restraining orders until a Brazilian court issued a forfeiture or confiscation judgment. Because no such foreign court judgment had yet issued, the District Court denied the U.S. Government's application for restraining orders.

II

We first explain our jurisdiction to hear this appeal under 28 U.S.C. § 1292(a)(1).

The courts of appeals have jurisdiction to review district court decisions "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). Under this statute, we have appellate jurisdiction to review the District Court's granting or denying of a preliminary injunction. *See Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009). A restraining order lasting longer than 14 days generally is considered an injunction, the granting or denying of which is subject to appeal. *See Sampson v. Murray*, 415 U.S. 61, 86 (1974); *United States v. E-Gold, Ltd.*, 521 F.3d 411, 414-15 (D.C. Cir. 2008) (order restraining "assets pending trial and judgment" is an "injunction" under 28 U.S.C. § 1292(a)(1)). Here, the relevant restraining orders sought by the Government – and ultimately denied by the District Court – would have lasted far longer than 14 days. Therefore, the District Court's March decision (which dissolved prior injunctions that had already lasted longer than 14 days and would have continued indefinitely) and its May decision (denying an injunction that would have lasted longer than 14 days) are appealable under § 1292(a)(1).

We thus proceed to the merits of the statutory dispute. In analyzing the statute, we exercise de novo review. *See United States v. Sheehan*, 512 F.3d 621, 629 (D.C. Cir. 2008).

III

Before 2000, the U.S. could forfeit assets at the request of a foreign government only by instituting independent

forfeiture proceedings in a U.S. Court based on alleged violations of U.S. law.

In 2000, Congress passed and President Clinton signed the Civil Asset Forfeiture Reform Act, Pub. L. No. 106-185, § 15, 114 Stat. 202, 219-21 (2000). That Act included most of what is now 28 U.S.C. § 2467. Section 2467 grants federal district courts jurisdiction to enforce "foreign forfeiture or confiscation judgment[s]" and to "enter such orders as may be necessary to enforce the judgment on behalf of the foreign nation." 28 U.S.C. § 2467(c)(1), (d)(1). The statute thus allows the U.S. Government to forfeit assets based on the existence of a foreign court judgment; no longer does the U.S. Government need to institute independent forfeiture proceedings based on violations of U.S. law in order to seize such property.

In 2001, Congress passed and President Bush signed the Patriot Act, a wide-ranging piece of legislation that included what is now 28 U.S.C. § 2467(d)(3). That provision authorizes federal district courts to issue temporary restraining orders to "preserve the availability of property subject to a foreign forfeiture or confiscation judgment." *Id.* § 2467(d)(3)(A).

The statutory issue before us is whether property may be frozen under § 2467(d)(3) only *after* a foreign court has entered a forfeiture judgment, or also may be frozen even *before* any such foreign court forfeiture judgment.

A

By its plain text, § 2467(d)(3) allows U.S. courts to issue temporary restraining orders to preserve property "subject to a

foreign forfeiture or confiscation *judgment*" – not to preserve property "subject to foreign forfeiture or confiscation." Standing alone, the phrase "subject to a foreign forfeiture or confiscation judgment" is more naturally read to mean that the foreign court's judgment already has been entered, not that a judgment might be issued in the future.

Moreover, Congress knows the difference between "subject to forfeiture" and "subject to a forfeiture judgment." Congress has repeatedly used the phrase "subject to forfeiture" to describe property that may be forfeited in a future proceeding. *E.g.*, 8 U.S.C. § 1324(b)(1); 16 U.S.C. § 470gg(b); *id.* § 668b(b); *id.* § 742j-1(e); *id.* § 972f(c); *id.* § 1171(a); *id.* § 1417(c); *id.* § 1437(e)(1); *id.* § 1540(e)(4)(A); 18 U.S.C. § 981(a)(1); *id.* § 983(a)(1)(A)(iii); 19 U.S.C. § 1497(a)(1)(B)(ii); 21 U.S.C. § 881(a); 26 U.S.C. § 7303; *id.* U.S.C. § 7608(a)(4); 30 U.S.C. § 1466(a). In other statutes, by contrast, Congress has used the phrase "subject to a final order" or decision, and those laws plainly contemplate a decision or order that already has been issued. *E.g.*, 5 U.S.C. § 1215(a)(4) ("subject to a final order"); 7 U.S.C. § 12d ("subject to a final decision or order"); 29 U.S.C. § 1872 ("subject to a final order").

Here, Congress chose to include the word "judgment" in § 2467(d)(3) and to define "forfeiture or confiscation judgment" in § 2467(a)(2) as "a final order of a foreign nation." Congress's decision to include the word "judgment" suggests that assets may be frozen under § 2467(d)(3) only *after* a foreign court has entered a forfeiture judgment. Congress's deliberate choice must be respected. *Cf. Lopez v. Gonzales*, 549 U.S. 47, 56 (2006); *Gozlon-Peretz v. United States*, 498 U.S. 395, 404-05 (1991).

8

B

In attempting to overcome the significance of the word "judgment" in § 2467(d)(3), the Government offers five main arguments.

*First*, the Government cites other language in the statutory text that, it says, contemplates that the Government can obtain a restraining order even before a foreign court judgment. For example, § 2467(d)(3)(B)(i) states that a court, in deciding whether to issue a restraining order, may rely on "an affidavit describing the nature of the proceeding or investigation *underway* in the foreign country" and on documents "setting forth a reasonable basis to believe that the property to be restrained *will be named* in a judgment of forfeiture *at the conclusion* of such proceeding." 28 U.S.C. § 2467(d)(3)(B)(i) (emphasis added). Section 2467(d)(3)(C) provides that the property owner may not challenge the application for the restraining order based on a ground also raised in the litigation "*pending*" in the foreign court. The Government argues that those statutory phrases obviously contemplate a future foreign judgment.

But the key fact that makes sense of those statutory provisions – and that undermines the Government's position here – is that forfeitures are often a two-stage process, as the Government acknowledged at oral argument. *See* Tr. of Oral Arg. at 25-26. In the first stage, a foreign court renders a forfeiture or confiscation judgment against an individual or entity – that is, a judgment "compelling a person or entity . . . to pay a sum of money . . . ." 28 U.S.C. § 2467(a)(2). In many instances, however, the specific assets that must be seized to give effect to that judgment are unknown at the time. That leads to the second stage, which culminates in a separate

judgment of forfeiture naming the specific property to be forfeited.

With that two-stage reality in mind, we read the language of § 2467(d)(3)(B)(i) and (d)(3)(C) to refer to the process that precedes entry of the second-stage judgment naming the property to be forfeited. That approach both makes sense of those prospective elements of the overall statutory scheme *and* respects the congressional decision to use the word "judgment" in § 2467(d)(3) as the prerequisite for a restraining order.

That approach also corresponds to the difference in language between § 2467(a)(2) and (d)(3)(B)(i). Section 2467(a)(2) anticipates a forfeiture judgment against a *person or entity* as the prerequisite for a freeze order. Section 2467(d)(3)(B)(i) in turn contemplates a judgment of forfeiture naming *the property* to be restrained as something that will occur after the freeze order.

Contrary to the Government's contention, the nuanced statutory language meshes nicely with the two-stage foreign forfeiture process.

*Second*, the Government suggests that § 2467(d)(3)'s cross-reference to § 983(j) of Title 18 justifies reading § 2467(d)(3) as authorizing property restraints *before* a foreign judgment. As previously noted, § 2467(d)(3) provides that "the Government may apply for, and the court may issue, a restraining order pursuant to section 983(j)" to "preserve the availability of property subject to a foreign forfeiture or confiscation judgment." *Id.* § 2467(d)(3)(A).

Section 983(j) is a general provision that authorizes the temporary restraint of assets "subject to civil forfeiture" as a result of violations of U.S. law. Section 983(j) in essence provides a model for how restraining orders will be issued under § 2467(d)(3). The Government points out that § 983(j) allows the restraint of property "subject to civil forfeiture," which contemplates a civil forfeiture judgment in the future. 18 U.S.C. § 983(j)(1). But that prospective language does not answer the question here about § 2467(d)(3). As already discussed, foreign forfeiture often is a two-stage process – an initial foreign forfeiture or confiscation judgment against a person or entity followed by a subsequent judgment naming the property to be forfeited. So the fact that § 983(j) is prospectively focused on a future judgment does not answer the question in this case. After all, our reading of the statute contemplates a future judgment – the second-stage judgment – naming the property to be forfeited.

*Third,* the Government argues that requiring a foreign judgment as a prerequisite to a freeze order would render meaningless the 2001 statutory amendment that added § 2467(d)(3). Not so. The 2001 amendment specified the procedures for issuing restraining orders based on foreign court judgments. That amendment thereby eliminated some of the uncertainty about how courts were to go about preserving and restraining the assets of a person or entity subject to a foreign court judgment. Congress had made the major legislative decision on this issue in 2000, when it first decided that the U.S. Government could forfeit assets based on a foreign court's judgment (and not only based on suspected or actual violations of U.S. law). The 2001 amendment filled in some gaps left by the 2000 legislation and made sure that the assets of a guilty party could be frozen once the foreign judgment against the individual had been

entered, even though the second-stage judgment naming the property had not yet occurred.

Recall that § 2467(d)(1) – part of the original 2000 enactment – states that a "district court shall enter *such orders as may be necessary* to enforce the judgment on behalf of the foreign nation." *Id.* § 2467(d)(1) (emphasis added). That general phrasing left room for litigants to argue that property could not be temporarily restrained or frozen until the property itself was named in a judgment of forfeiture – in other words, only after the *second stage* of the two-stage foreign forfeiture process. Section 2467(d)(3) eliminated that uncertainty by expressly providing for temporary restraining orders before the second-stage judgment. Section 2467(d)(3) also outlined what kinds of evidence can be used when the Government attempts to obtain those restraining orders and makes clear that U.S. courts cannot consider the same challenges being raised in the foreign court. In the absence of these statutory clarifications, district courts would have been left to their own devices to figure out whether temporary restraining orders were permitted at all before a foreign judgment naming the property was issued, what forms of evidence would be admissible in deciding to issue those restraining orders, and whether U.S. courts could consider the same arguments being addressed in the foreign court.

In short, we reject the Government's contention that our reading renders the 2001 amendment meaningless.

*Fourth*, the Government cites legislative history in the form of a Report of the House Committee on Financial Services. As an initial matter, the Committee Report provides conflicting evidence on whether § 2467(d)(3) was meant to allow the restraint of property before a foreign judgment. For

example, the Report indicates that § 2467(d)(3) was meant to give federal courts the authority to enforce "foreign forfeiture judgment[s]." H.R. REP. NO. 107-250, pt. 1, at 59 (2001). That statement supports our reading because it refers to a judgment. That said, the Report also provides that the 2001 amendment was meant "to include a mechanism for preserving property *subject to forfeiture* in a foreign country." *Id.* (emphasis added). That statement tends to support the Government's reading. So the legislative history may point in both directions, at least insofar as the House Report does not refer to a two-stage forfeiture process.

Of course, even if this lone Report from one Committee of one House did support the Government's reading of § 2467(d)(3), the statutory text controls. As a general matter, "it is the statute, and not the Committee Report, which is the authoritative expression of the law." *City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 337 (1994); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material."). And here, the relevant statutory text says "subject to a foreign forfeiture or confiscation judgment," not "subject to forfeiture." We cannot disregard the congressional intent reflected in that statutory text.

*Fifth*, the Government points to policy interests supporting its reading of § 2467(d)(3). If the U.S. Government is unable to restrain assets before there is a foreign forfeiture judgment against the person or entity, then those assets might disappear before they can be restrained. And if the U.S. does not help other countries restrain assets before the foreign trial, it allegedly will not meet its obligations under the Vienna Convention; as a result, other

countries might be hesitant to restrain assets for the U.S in similar circumstances.

To begin with, the Government indicated at oral argument that § 2467(d)(3) has been invoked in attempts to obtain pre-judgment restraining orders only 10 to 12 times in the last decade – approximately once a year. *See* Tr. of Oral Arg. at 4. The Government has expressly stated, moreover, that this provision is not used in national security cases. *Id.* at 71.[1] Furthermore, a separate statute – § 981 of Title 18 – was designed to meet the U.S.'s obligations under the Vienna Convention.

In considering the Government's policy arguments, which we of course take very seriously, we must note that there are strong policy interests on the other side as well. Section 2467(d)(3) applies to U.S. citizens and noncitizens alike, as the Government acknowledged at oral argument. *See id.* at 5. So under the Government's interpretation, a U.S. citizen's assets could be frozen for years – without any meaningful substantive judicial review in a U.S. court – based merely on the request of a foreign official and the prospect that the property owner might one day be found guilty or liable in a foreign court. Here, as elsewhere, it is difficult to

---

[1] There are a number of statutory tools available to the Government when it seeks to freeze assets in the name of national security. *See, e.g.*, 8 U.S.C. § 1189(a)(2)(C) (Secretary of Treasury can require freezing of assets linked to foreign terrorist organizations); 18 U.S.C. § 981(a)(1)(G) (assets of persons perpetrating terrorism against the U.S. or U.S. persons or property can be forfeited); *id.* § 1956(c)(7)(D) (forfeiture is available for various terrorism and terrorism-related crimes); 50 U.S.C. § 1702(a) (President has the authority to freeze assets of foreign persons or organizations engaged in hostilities against the U.S.).

believe Congress would "enact so significant a [measure] without a clear indication of its purpose to do so." *United States v. O'Brien*, 130 S. Ct. 2169, 2172 (2010). Congress does not typically hide elephants in mouseholes, and the Government's assertion of authority in this case qualifies as such an elephant. *Cf. Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

In any event, regardless of how one might ultimately balance and resolve the policy arguments, policy considerations alone cannot transform the content of a statute's text. It is not a court's role to substitute its "view of . . . policy for the legislation which has been passed by Congress." *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S. Ct. 2326, 2339 (2008) (internal quotation marks omitted). In this case, as we have repeatedly explained, the word "judgment" in the statutory text is critical and indicates how Congress itself authoritatively struck the balance between the competing policy considerations.

Of course, if the Department of Justice wants Congress to expand the Government's authority, the Department can so recommend to the Legislative Branch. Indeed, the Government's counsel told us at oral argument that the Department of Justice is already working on such draft legislation.

\* \* \*

We affirm the District Court's March 2009 and May 2009 decisions rejecting the Government's applications for restraining orders.

*So ordered.*

APPENDIX

## § 2467. Enforcement of foreign judgment

(a) Definitions. – In this section –

(2) the term "forfeiture or confiscation judgment" means a final order of a foreign nation compelling a person or entity –

(A) to pay a sum of money representing the proceeds of an offense described in Article 3, Paragraph 1, of the United Nations Convention, any violation of foreign law that would constitute a violation or an offense for which property could be forfeited under Federal law if the offense were committed in the United States, or any foreign offense described in section 1956(c)(7)(B) of title 18, or property the value of which corresponds to such proceeds; or

(B) to forfeit property involved in or traceable to the commission of such offense.

\* \* \*

(d) Entry and Enforcement of Judgment. –

(1) In general. – The district court shall enter such orders as may be necessary to enforce the judgment on behalf of the foreign nation unless the court finds that –

(A) the judgment was rendered under a system that provides tribunals or procedures incompatible with the requirements of due process of law;

(B) the foreign court lacked personal jurisdiction over the defendant;

(C) the foreign court lacked jurisdiction over the subject matter;

(D) the foreign nation did not take steps, in accordance with the principles of due process, to give notice of the proceedings to a person with an interest in the property of the proceedings in sufficient time to enable him or her to defend; or

(E) the judgment was obtained by fraud.

(2) Process. – Process to enforce a judgment under this section shall be in accordance with rule 69(a) of the Federal Rules of Civil Procedure.

(3) Preservation of property. –

(A) In general. – To preserve the availability of property subject to a foreign forfeiture or confiscation judgment, the Government may apply for, and the court may issue, a restraining order pursuant to section 983(j) of title 18, at any time before or after an application is filed pursuant to subsection (c)(1) of this section.

(B) Evidence. – The court, in issuing a restraining order under subparagraph (A) –

(i) may rely on information set forth in an affidavit describing the nature of the proceeding or investigation underway in the foreign country, and setting forth a reasonable basis to believe that the property to be restrained will be named in a judgment of forfeiture at the conclusion of such proceeding; or

(ii) may register and enforce a restraining order that has been issued by a court of competent jurisdiction in the foreign country and certified by the Attorney General pursuant to subsection (b)(2).

(C) Limit on grounds for objection. – No person may object to a restraining order under subparagraph (A) on any ground that is the subject of parallel litigation involving the same property that is pending in a foreign court.