In re CONTENTS IN CITIBANK ACCOUNT NO. ***** HELD BY ROUZ USA, INC.; Contents in Citibank Account No. ***** Held by Advanced Source International, Inc.; Contents in Citibank Account No. ***** Held by Advanced Source International, Inc.; 2007 Bentley Arnage VIN ***** and 2008 Mercedes GL 450 VIN ***** Held by Rouz USA; Proceeds of 538,980 Shares of Stock Held in Account No. ***** at: Fidelity Money Market Fund No. *****, Under the Name of Madina Stepanchenko.

No. M18–981 (JGK).

United States District Court, S.D. New York.

Nov. 12, 2010.

### *OPINION AND ORDER*

JOHN G. KOELTL, District Judge:

Before the Court is the application of the movants, Yury and Madina Stepanchenko ("the Stepanchenkos"), to dissolve a restraining order entered on April 9, 2010. The restraining order was entered upon the Government's *ex parte* application, pursuant to 28 U.S.C. § 2467(d)(3)(A) and (d)(3)(B)(ii), to enforce five Russian seizure orders.

### I.

Yury Stepanchenko is a Russian businessman and former politician. (Grover Decl. ¶¶ 5–6.) On or about December 27, 2007, Mr. Stepanchenko was named as a defendant in a Russian indictment alleging an illegal scheme to rig auctions of government real estate. (*Id.* ¶ 9.) Mr. Stepanchenko, who claims that the prosecution is politically motivated, fled Russia to Ukraine and ultimately the United States around the time of the indictment. (*Id.;* Kittlestad Aff. ¶ 5.) He currently lives in New York, along with his wife, Madina Stepanchenko. (Grover Decl. ¶ 7.)

Beginning in 2007, the Russian authorities obtained a series of court orders restraining and freezing assets allegedly traceable to the defendants charged in the Russian indictment. (Kittlestad Aff. ¶ 10.) On March 11, 2010, a district court in Vladivostok issued five restraining orders

for three corporate banking accounts, one investment account in Mrs. Stepanchenko's name, and two automobiles (the "Vladivostok orders"). (Grover Decl. Ex. Q–A to Q–E.) All of this property was located in the United States and, allegedly, was controlled by one or both of the Stepanchenkos and allegedly was traceable to the charged criminal activity. (*Id.* Ex. Q–A to Q–E.) To date, no final judgment of forfeiture has been entered in Russia in connection with this property, the corporations whose accounts were restrained, or either of the Stepanchenkos.

On April 5 and 8, 2010, the Assistant Attorney General ("AAG") for the Criminal Division of the United States Department of Justice ("DOJ") certified the restraining orders pursuant to 28 U.S.C. § 2467(b)(2). On April 9, 2010, the Government submitted an application for the entry of a restraining order pursuant to 28 U.S.C. § 2467(d)(3), "in order to preserve [the assets subject to the Vladivostok restraining orders] until such time [as] a Russian criminal forfeiture judgment is presented for execution in the United States." (*Id.* Ex. Q at 1.) This Court granted the order, restraining the property that had been frozen by the Vladivostok orders (the "American order"). (*Id.* Ex. A at 1–2.)

Subsequently, the Stepanchenkos challenged three of the Vladivostok orders in Russian courts; each challenged order was reversed on appeal and then reinstated by the lower court. (Grover Decl. ¶ 52; Kittlestad Aff. ¶ 18; Gov't Oct. 13, 2010 Ltr. Br. 1.) On August 3, 2010, the Stepanchenkos moved this Court to dissolve the American order.

## II.

In 2000, Congress enacted the Civil Asset Forfeiture Reform Act ("CAFRA"), which, among other things, allowed the Government to forfeit assets based on the existence of a foreign court judgment without instituting independent forfeiture proceedings based on violations of United States law. *In re Any and All Funds or Other Assets, in Brown Bros. Harriman & Co. Account # 8870792 in the Name of Tiger Eye Invs. Ltd. ("Brown Bros. II"),* 613 F.3d 1122, 1126 (D.C.Cir.2010). In relevant part, CAFRA created § 2467, which grants federal district courts jurisdiction to enforce "foreign forfeiture or confiscation judgment[s]" and to "enter such orders as may be necessary to enforce the judgment on behalf of the foreign nation." 28 U.S.C. § 2467(a)(2), (c)(1), (d)(1). For the purposes of § 2467, "the term 'forfeiture or confiscation judgment' means a final order of a foreign nation compelling a person or entity" to "pay a sum of money representing the proceeds of" any of a wide range of offenses or to "forfeit property involved in or traceable to the commission of" such an offense. *Id.* § 2467(a)(2). In order to have a forfeiture or confiscation judgment enforced, a foreign nation must request certification by the Attorney General or a designee of the Attorney General.[1] *Id.* § 2467(b). After certification, the United States may file an application seeking enforcement of the foreign forfeiture or confiscation judgment as if it had been entered by a court in the United States. *Id.* § 2467(c)(1).

In 2001, Congress amended § 2467 as part of the enactment of the Patriot Act. Among other changes, the 2001 amendment added § 2467(d)(3), which reads:

(3) Preservation of property.—

---

1. The Attorney General has delegated § 2467 certification authority to the AAG for the Criminal Division. *See* Att'y Gen. Order

2820–2006 (May 9, 2006), *available at* http://www.usdoj.gov/ag/readingroom/ag2820–2006.pdf.

(A) In general.—To preserve the availability of property subject to a foreign forfeiture or confiscation judgment, the Government may apply for, and the court may issue, a restraining order pursuant to section 983(j) of title 18, at any time before or after an application is filed pursuant to subsection (c)(1) of this section.

(B) Evidence.—The court, in issuing a restraining order under subparagraph (A)—

> (i) may rely on information set forth in an affidavit describing the nature of the proceeding or investigation underway in the foreign country, and setting forth a reasonable basis to believe that the property to be restrained will be named in a judgment of forfeiture at the conclusion of such proceeding; or

> (ii) may register and enforce a restraining order that has been issued by a court of competent jurisdiction in the foreign country and certified by the Attorney General pursuant to subsection (b)(2).

(C) Limit on grounds for objection.—No person may object to a restraining order under subparagraph (A) on any ground that is the subject of parallel litigation involving the same property that is pending in a foreign court.

### III.

#### A.

The dispute before the Court turns on § 2467(d)(3)(A)'s use of the phrase "property subject to a foreign forfeiture or confiscation judgment." The movants argue that district courts lack jurisdiction to enter an order pursuant to § 2467(d)(3) in the absence of a *final* foreign order, relying on § 2467(a)(2)'s definition of "forfeiture or confiscation judgment" as "a final

order." Because no such final foreign order was entered in connection to the property, parties, or offenses at issue in this case, the movants argue that the order entered by this Court was improper and must be dissolved. This interpretation has been accepted by the Court of Appeals for the District of Columbia Circuit and the District Court for the District of Columbia in the only opinions applying § 2467. *See Brown Bros. II*, 613 F.3d at 1126–27; *In re Any and All Funds or Other Assets, in Brown Bros. Harriman & Co. Account # 8870792 in the Name of Tiger Eye Invs. Ltd.* ("*Brown Bros. I*"), 601 F.Supp.2d 252, 261 (D.D.C.2009), *aff'd*, 613 F.3d 1122.

The Government argues that this interpretation places too much emphasis on the isolated phrase "property subject to a foreign forfeiture or confiscation judgment," thereby defeating Congress's intent "to confer authority for district courts to enter *pre-judgment* restraining orders in support of foreign forfeiture proceedings." (Gov't Mem. 16.) According to the Government, the plain language of § 2467(d)(3) "has prospective application" and is designed to preserve the availability of property that may become subject to a foreign forfeiture or confiscation judgment. (*Id.* at 16–17.) The 2001 amendments "clearly contemplat[e] entry of a restraining order prior to the close of a foreign proceeding," the Government argues, by referring to "proceeding[s] or investigation[s] *underway* in the foreign country" and the naming of property "in a judgment of forfeiture *at the conclusion* of such proceeding," and by barring objection "on any ground that *is* the subject of *parallel litigation* involving the same property *that is pending* in a foreign court." 28 U.S.C. § 2467(d)(3) (emphasis added).

The Government falls back on the proposition that "in exceptional cases, Congressional intent must prevail over the lit-

eral reading of the words" of a statute. (Gov't Mem. 19.) It argues that legislative history, "along with a common sense understanding of the reason for the amendment," evinces congressional intent to provide district courts with authority to provisionally seize and restrain property in advance of a final foreign order. (*Id.* at 21.) It cites a Report of the House Committee on Financial Services, which stated that the amendments to § 2467 "include[d] a mechanism for preserving property subject to forfeiture in a foreign country." H.R.Rep. No. 107–250, pt. 1, at 59 (2001). Because the House Committee on Financial Services used the term "subject to forfeiture," the Government argues, Congress "obviously intended" the phrase "subject to a foreign forfeiture or confiscation judgment" to be equivalent to the phrase "subject to forfeiture," which is used elsewhere in the United States Code to describe property that is "capable of" forfeiture, rather than property that is the subject of an extant, final order. (Gov't Mem. 21–22.) Finally, the Government argues that the movants and the *Brown Brothers* opinions fail to account for the Government's policy interests in "liv[ing] up to its United Nations and other treaty obligations which require that it be able to freeze assets sought for confiscation by another State Party" and in avoiding procedures that "duplicate ... litigation which is ongoing in [a] foreign jurisdiction." (*Id.* 22–23.)

### B.

■ "[S]tatutory interpretation begins with the language of the statute" and, if the text of a statute is unambiguous, goes no further, "except in 'rare and exceptional circumstances.'" *United States v. Lucien,* 347 F.3d 45, 51 (2d Cir.2003) (quoting *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984)); *see also Conn. Nat'l Bank v. Ger-*

*main,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("When the words of a statute are unambiguous, then the first canon is also the last: judicial inquiry is complete." (internal quotation omitted)). If the text is unambiguous, "legislative history is instructive only upon 'the most extraordinary showing of contrary intentions.'" *Lucien,* 347 F.3d at 51 (quoting *Garcia,* 469 U.S. at 75, 105 S.Ct. 479).

Section 2467(d)(3) unambiguously allows a court to issue a restraining order only against property that is "subject to a foreign forfeiture or confiscation judgment." Section 2467(a)(2), in turn, unambiguously defines "forfeiture or confiscation judgment" to mean a "final order of a foreign nation" compelling the payment of money or forfeiture of property. *See Stenberg v. Carhart,* 530 U.S. 914, 942, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning."). Accordingly, a court may issue a restraining order pursuant to § 2467(d)(3) only if the property to be restrained is "subject to" a "final order of a foreign nation."

■ The Government argues that property subject to a foreign restraining order that is entered in anticipation of a final order of forfeiture in a foreign nation is "subject to a foreign forfeiture or confiscation judgment" because it is "capable of" forfeiture and therefore may one day be named in a final foreign order. The text of § 2467 plainly cannot bear this meaning. "Congress knows the difference between 'subject to forfeiture' and 'subject to a forfeiture judgment.' Congress has repeatedly used the phrase 'subject to forfeiture' to describe property that may be forfeited in a future proceeding. In other statutes, by contrast, Congress has used the phrase 'subject to a final order' or

decision, and those laws plainly contemplate a decision or order that already has been issued." *Brown Bros. II*, 613 F.3d at 1126 (citations omitted). Although the phrase "subject to" can, as the Government points out, bear multiple meanings, in this context it clearly has present, rather than prospective, effect.

The Government rightly argues that § 2467(d)(3) must be read in the context of § 2467 as a whole. *See Auburn Housing Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir.2002) ("The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another. In other words, the preferred meaning of a statutory provision is one that is consonant with the rest of the statute.") The remainder of § 2467, however, only reinforces the conclusion that § 2467(d)(3) requires a preexisting foreign judgment. Every reference to a "forfeiture or confiscation judgment" in § 2467 presupposes an extant judgment.[2] Section 2467 as a whole is titled "Enforcement of foreign judgment," suggesting that everything therein is directed at the enforcement of an extant judgment; moreover, § 2467(d) in particular is titled "Entry and Enforcement of Judgment," suggesting that its contents— § 2467(d)(3) included—lay out the process for entry and enforcement *of a judgment,* which cannot happen before that judgment

exists. *See Almendarez–Torres v. United States,* 523 U.S. 224, 234, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation omitted)).

Contrary to the Government's arguments, this reading does not render § 2467(d)(3) superfluous. *Cf. TRW Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation omitted)). As this case illustrates, the international process of certifying, registering, and enforcing a foreign forfeiture or confiscation judgment does not happen overnight. Rather, it requires a request by the foreign nation, review and certification by a senior Department of Justice official, and application to a district court. In this case, the Department of Justice took nearly a month to certify and seek enforcement of the Vladivostok orders; presumably, the process takes a similar amount of time when a final foreign order is involved. Under § 2467(d)(3)(A), by contrast, the Government can obtain a restraining order immediately after the entry of a final foreign order, bypassing the bureaucratic requirements that must be

---

**2.** *See* 28 U.S.C. § 2467(b)(1) (requiring "[a] foreign nation seeking to have a forfeiture or confiscation judgment registered and enforced" to submit "a summary of the facts of the case and a description of the proceedings that resulted in the forfeiture or confiscation judgment" and a "certified copy of the forfeiture or confiscation judgment"); *id.* § 2467(c)(1) (allowing the United States to file an application "seeking to enforce the foreign forfeiture or confiscation judgment as if the judgment had been entered by a court of the United States"); *id.* § 2467(d)(1) (bar-

ring a district court from entering an order to enforce a judgment if it finds that the judgment "was rendered under a system that provides tribunals or procedures incompatible with the requirements of due process of law" or "was obtained by fraud"); *id.* § 2467(e) (binding a domestic court to "the findings of fact to the extent that they are stated in the foreign forfeiture or confiscation judgment"); *id.* § 2467(f) (addressing the rate of exchange used to calculate "the amount stated in any forfeiture or confiscation judgment").

met to obtain an order pursuant to § 2467(d)(1). *See* 28 U.S.C. § 2467(d)(3)(A) (allowing the Government to apply for a restraining order "at any time before or after an application is filed pursuant to subsection (c)(1) of this section"). The 2001 amendments also spell out the evidence that would suffice to obtain such a restraining order and the procedures applicable to an application therefor.

The movants' construction gives § 2467(d)(3) a relatively narrow scope. But it is far from the nullity or absurdity that the Government claims it to be. *See Brown Bros. I*, 601 F.Supp.2d at 260 ("A statute that is narrower or broader than might at first blush seem sensible is … not absurd.").

Section 2467(d)(3) incorporates the procedures of 18 U.S.C. § 983(j) relating to restraining orders and protective orders in civil forfeiture proceedings.[3] The Government is correct that it is difficult to fit those procedures into the context of a final forfeiture order. However, it is no less difficult under the Government's preferred interpretation of § 2467(d)(3). As the Government's attempts to give meaning to the reference to § 983(j) illustrate, any application of that provision requires substantial creativity. But whatever procedures are required before a restraining order can be entered under § 2467(d)(3), they do not change the threshold requirement of an existing foreign forfeiture or confiscation judgment.

The Government's proposal for incorporating § 983(j) raises significant concerns of its own. Without any support in the text of either § 2467 or § 983(j), the Government analogizes a foreign restraining order to a civil forfeiture in the United States, and argues that the lesser protections afforded in § 983(j) when a civil forfeiture complaint has been filed should be applied when a foreign restraining order has been filed. The Government's position, after oral argument and its post-argument submissions, appears to be that the Government must "make a showing pursuant to 18 U.S.C. § 983(j)(1)(B) or § 983(j)(3) if the seizure is accomplished based only on a foreign official's affidavit." (Gov't Oct. 13, 2010 Ltr. Br. 3.) If the Government proceeds on the basis of a foreign restraining order, on the other hand, the only protection is that of "the

---

**3.**  Section 983(j)(1)(B) provides that:

prior to the filing of such a complaint, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—
(i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and
(ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered.

Section 983(j)(3) provides that:
A temporary restraining order under this subsection may be entered upon application

of the United States without notice or opportunity for a hearing when a complaint has not yet been filed with respect to the property, if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought is subject to civil forfeiture and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than 14 days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period. A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time and prior to the expiration of the temporary order.

foreign court process for foreign restraining orders." (*Id.*) But the Government has also argued that a proceeding based on a foreign restraining order under § 2467(d)(3)(B)(ii) is not subject to the review provided in § 2467(d)(1) for final foreign judgments. (Gov't Nov. 3, 2010 Ltr. Br. 2.) Indeed, the Government urges this Court not "to review the Russian courts' process according to U.S. principles of due process," for the very reason that they are not "final orders of forfeiture." (*Id.*)

In other words, the Government's position seems to be that the cross-reference to § 983(j) has the effect of exempting proceedings such as this one under § 2467(d)(3)(B)(ii), where a foreign restraining order has been filed, from any review at all—either the specific requirements of § 983(j) or the more general due process standards of § 2467(d)(1). This would allow "a U.S. citizen's assets [to] be frozen for years—without any meaningful substantive judicial review in a U.S. court—based merely on the [entry of a pre-judgment restraining order] and the prospect that the property owner might one day be found guilty or liable in a foreign court." *Brown Brothers II,* 613 F.3d at 1129–30. The Government's effort to import the tiers of scrutiny in § 983(j) thus implies a troublingly open-ended authority that belies the supposed workability of the Government's interpretation.

Moreover, the Government's reading of § 983(j)(3) is difficult to reconcile with the text. That section provides for a temporary restraining order "without notice or opportunity for a hearing when a complaint has not yet been filed with respect to the property," if there is "probable cause to believe that the property with respect to which the order is sought is subject to civil forfeiture and that the provision of notice will jeopardize the availability of the property for forfeiture." 18 U.S.C. § 983(j)(3). There is no support in either § 2467(d)(3) or § 983(j)(3) for reading the word "complaint" in this section to be the issuance of a foreign restraining order, even one that is registered under § 2467(d)(3)(B)(ii).

Instead, the incorporation of § 983(j) into § 2467(d)(3) can reasonably be read to provide procedures for restraining orders attendant to the filing of a final order of forfeiture or confiscation of a foreign nation, and providing for a temporary restraining order where the requirements of § 2467(c)(1) have not yet been satisfied.[4]

Nor is the literal reading of § 2467(d)(3) manifestly contrary to congressional intent, as the Government believes it to be. *See Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) ("[I]n rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling."). One line in the House Report accompanying the 2001 amendments does lend some support to the notion that Congress, or at least some congress persons, intended the statute to apply more broadly to "property subject to forfeiture in a foreign country" rather than—as the statute's text requires— "property subject to a foreign forfeiture or confiscation judgment." *See* H.R.Rep. No. 107–250, pt. 1, at 59. But this implication is contradicted in the following paragraph, when the House Report describes an order

---

4. There is language in § 2467(d)(3)(B)(i) that appears to contemplate an ongoing forfeiture proceeding that has not yet resulted in a final judgment, and therefore is difficult to reconcile with the remainder of the statute. But while there may be some ambiguity in this language, it is insufficient to overcome the clear requirement of a "final" order in § 2467(a)(2).

entered pursuant to the new § 2467(d)(3) as "an order enforcing a foreign forfeiture *judgment." Id.* (emphasis added). The legislative history thus lacks the clarity of purpose that it would need to overcome the clear language of the statute actually enacted. *See Brown Bros. II,* 613 F.3d at 1129 ("[T]he legislative history may point in both directions . . . ."); *Brown Bros. I,* 601 F.Supp.2d at 260–61 (discussing evidence that a proposal "explicitly grant[ing] district court jurisdiction to issue restraining orders based on non-final forfeiture or confiscation orders" was circulated by a DOJ official, but was not proposed to Congress by the DOJ).

Finally, the Government argues that a "significant national interest" is hampered by a narrow reading of § 2467(d)(3)—specifically, the need for the ability "to provide reciprocal legal assistance to preserve property at the request of other countries prior to final judgment" and to live up to treaty obligations. (Gov't Mem. 22.)[5] If that is so, "[t]he remedy for any dissatisfaction . . . lies with Congress and not with this Court. Congress may amend the statute; we may not." *Griffin,* 458 U.S. at 576, 102 S.Ct. 3245. Moreover, the Government's interpretation raises serious policy concerns of its own with respect to the potential for the statute, as interpreted by the Government, to be used to freeze the assets of United States citizens based on foreign restraining orders without meaningful review. *See Brown Bros. II,* 613 F.3d at 1129–30. It might well be that the authority claimed by the Government is wise or even necessary, and the Government's proposed procedures might be a sensible way to implement it. But that is

a decision for Congress to make, not this Court.

### C.

 The Government concedes that there is no final foreign order on which to base the American order. Accordingly, the Court lacked jurisdiction to enter the American order. Therefore, the order must be dissolved.

### CONCLUSION

For the foregoing reasons, the motion is **granted.** Restraining order M18–981 is **dissolved.** This Order is stayed for ten days to allow the Government to follow any other appropriate procedures or to seek any further stay.

**SO ORDERED.**

---

**5.** As noted in *Brown Brothers II,* the Government does not argue that the provision is used in national security matters, and "[t]here are a number of statutory tools available to the Government when it seeks to freeze assets in the name of national security." 613 F.3d at 1129 & n. 1.