# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 16, 2012            Decided July 9, 2013

No. 12-5142

GANG LUAN, ET AL.,
APPELLANTS

v.

UNITED STATES OF AMERICA,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-mc-00208)

---

*Barry J. Pollack* argued the cause for appellants. With him on the briefs were *Brian A. Hill* and *Mia P. Haessly*.

*Vijay Shanker*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Lanny A. Breuer*, Assistant Attorney General. *Kirby A. Heller* and *Linda M. Samuel*, Attorneys, entered appearances.

Before: GARLAND, *Chief Judge*, HENDERSON, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: In 2010, a Hong Kong magistrate issued a warrant for the arrest of appellant Gang Luan on charges of smuggling, evasion of customs duties, bribery, conspiracy to defraud, and money laundering. Before the police could apprehend him, Luan fled to the United States. Thereafter, a Hong Kong court issued a restraining order to preserve Luan's assets, and the government of Hong Kong asked the United States Department of Justice for assistance in restraining those assets that had been transferred to this country. Pursuant to 28 U.S.C. § 2467(d)(3), the Justice Department filed an application for a restraining order in the United States District Court for the District of Columbia, which granted the application. Luan now appeals,[1] contending that the order fails to comply with the requirements of section 2467(d)(3). Concluding that the order does comply, we affirm the judgment of the district court.

I

Gang Luan was the sole owner and director of Offtech International Ltd. and Bluewhale Offshore Engineering Technology Co. Ltd., two companies purportedly involved in oilfield and ocean engineering and services. Luan's sister was the financial director of Bluewhale. According to Hong Kong authorities and the United States Department of Justice, Offtech and Bluewhale netted over $186 million by smuggling vessels and equipment into China, submitting false documents to customs officers, making bribes to win favorable contracts, and artificially inflating the prices of their goods through fraudulent agreements. *See* Affirmation of Inspector Chow Wai Tong Dennis ¶¶ 3-4; Application of the United States to Enforce and Register Foreign Restraining Order ("DOJ Application"), at 4-5. Luan and his sister then allegedly laundered the proceeds to

---

[1]The other appellants are entities that Luan owns or controls.

bank accounts in the United States and Mainland China. Smuggling, evasion of customs duties, bribery, conspiracy to defraud, and money laundering are crimes under Hong Kong law, and any proceeds stemming therefrom are subject to forfeiture. *See* Chow Aff. ¶ 25; DOJ Application at 11-12.

In late 2010, Hong Kong authorities moved to arrest Luan and his sister. By the time a magistrate issued an arrest warrant, however, Luan had fled Hong Kong for the United States. Luan's sister was arrested while attempting to travel to the United States from Hong Kong, but she too absconded to the United States after being released on bail.

In March 2011, Hong Kong prosecutors applied to the Court of First Instance of the High Court of Hong Kong for a restraining order to prevent the dissipation of assets controlled by Luan and his alleged co-conspirators. *See In re Male Luan Gang et al.*, [Mar. 15, 2011] Misc. Proceeding No. 409, at 2 (C.F.I.) (H.K.) (J.A. 58). The prosecutors supported their application with an affirmation from a Hong Kong customs inspector enumerating the allegations against Luan and the others. *See* Chow Aff.; *In re Male Luan Gang et al.* [Mar. 15, 2011] Misc. Proceeding No. 409, at 11 (C.F.I.) (H.K.) (J.A. 67) (citing affirmation). The affirmation stated that, at Luan's direction, Bluewhale submitted false documents to customs officials regarding six vessels and a dredger in order to avoid customs import tax and value-added tax. It further stated that, to obtain the contracts under which Bluewhale rented the vessels and dredger, Luan paid bribes to various persons. The Hong Kong investigation revealed that Offtech and Bluewhale had no actual business operations in Hong Kong, and that their registered business addresses were occupied by accounting firms that furthered the fraud. The affirmation also listed several bank accounts into which Luan and his co-conspirators had deposited the proceeds of their fraud. It alleged that Luan instructed a

subordinate to transfer $23.7 million from those accounts to the United States after authorities ordered his assets restrained, in return for which Luan paid the subordinate several hundred thousand dollars in cash. The affirmation estimated that the proceeds of the fraud were more than three times the defendants' identifiable assets. *See* Chow Aff. ¶¶ 3-5, 7-15, 25-37.

The Court of First Instance granted the prosecutors' application, barring Luan, his sister, and other alleged co-conspirators from dealing with their property located within or outside Hong Kong, including specified bank accounts in the United States. *See In re Male Luan Gang et al.*, [Mar. 15, 2011] Misc. Proceeding No. 409, at 2-6 (C.F.I.) (H.K.) (J.A. 58-62). The order notified Luan and the others that they could "apply to the Court at any time to vary or discharge this Order." *Id.* at 10 (J.A. 66). Several months later, the court held a hearing to determine whether the order should be continued. Neither Luan nor his counsel attended, and the restraining order was continued pending further order of the court. *See In re Male Luan Gang et al.*, [Aug. 15, 2011] Misc. Proceeding No. 409 (C.F.I.) (H.K.) (J.A. 126); Gov't Br. 24 n.4.

Shortly after the Hong Kong court issued its restraining order, the government of Hong Kong submitted a formal request for assistance under the Agreement Between the Government of the United States of America and the Government of Hong Kong on Mutual Legal Assistance in Criminal Matters, U.S.-H.K., Apr. 15, 1997, S. TREATY DOC. No. 105-6.[2] Hong Kong asked the United States to restrain $23.7 million of criminal

---

[2]The Agreement was entered into on the eve of the transfer of sovereignty over Hong Kong to the People's Republic of China, and was signed with the understanding that it would continue in force after the transfer. *See* U.S.-H.K. Mutual Legal Assistance Treaty, S. TREATY DOC. No. 105-6, at III (Letter of Transmittal).

proceeds that it said Luan had transferred to specific bank accounts and companies located in Texas. DOJ Application at 2-3, 5-6. The Justice Department certified that the Hong Kong restraining order was "in the interest of justice to register and enforce," and it filed an ex parte application to enforce the order pursuant to 28 U.S.C. § 2467(d)(3). DOJ Application at 13; *see id.*, Exhibit 1 (Assistant Attorney General Decision (Apr. 14, 2011)). Because the Hong Kong restraining order was "an *in personam* order against the charged individuals rather than an *in rem* order limited to only the specific assets then known to [Hong Kong] authorities," *id.* at 7, the Justice Department sought to enforce the Hong Kong restraining order against the $23.7 million of Luan's American assets that were traceable to the alleged criminal activities, *id.* at 6-7. Finding the prerequisites for a restraining order satisfied, the district court restrained all assets owned or controlled by Luan (and his Hong Kong co-defendants) located in the United States, up to $23.7 million, until the conclusion of the Hong Kong proceedings. *See In re Enforcement of a Restraining Order by the High Court*, Misc. Case No. 11-208 (D.D.C. Apr. 19, 2011); *see also In re Enforcement of a Restraining Order by the High Court*, Misc. Case No. 11-208 (D.D.C. May 5, 2011) (adding two safe deposit boxes to the order).

In October 2011, Luan filed a motion to dissolve the district court's order on the ground that it did not comply with the requirements of 28 U.S.C. § 2467(d)(3) because the Hong Kong government had filed neither a civil forfeiture complaint nor its functional equivalent. The district court disagreed, concluding that the Hong Kong restraining order proceedings and pending criminal proceedings were sufficient to secure United States enforcement under the statute. *See In re Enforcement of a Restraining Order by the High Court*, Misc. Case No. 11-208, at 3-4 (D.D.C. Apr. 4, 2012). Luan timely appealed. *See* 28 U.S.C. § 1292(a)(1).

6

II

We begin by describing the statutory framework for issuing restraining orders to preserve property subject to forfeiture under foreign law.

The central statute at issue is 28 U.S.C. § 2467(d)(3), entitled "Preservation of property."  For ease of exposition, we first set out its text in full:

> (A) Restraining orders.--
>
>> (i) In general.--To preserve the availability of property subject to civil or criminal forfeiture under foreign law, the Government may apply for, and the court may issue, a restraining order at any time before or after the initiation of forfeiture proceedings by a foreign nation.
>>
>> (ii) Procedures.--
>>
>>> (I) In general.--A restraining order under this subparagraph shall be issued in a manner consistent with subparagraphs (A), (C), and (E) of paragraph (1) and the procedural due process protections for a restraining order under section 983(j) of title 18.
>>>
>>> (II) Application.--For purposes of applying such section 983(j)--
>>>
>>>> (aa) references in such section 983(j) to civil forfeiture or the filing of a complaint shall be deemed to refer to the

applicable foreign criminal or forfeiture proceedings; and

(bb) the reference in paragraph (1)(B)(i) of such section 983(j) to the United States shall be deemed to refer to the foreign nation.

(B) Evidence.--The court, in issuing a restraining order under subparagraph (A)--

(i) may rely on information set forth in an affidavit describing the nature of the proceeding or investigation underway in the foreign country, and setting forth a reasonable basis to believe that the property to be restrained will be named in a judgment of forfeiture at the conclusion of such proceeding; or

(ii) may register and enforce a restraining order that has been issued by a court of competent jurisdiction in the foreign country and certified by the Attorney General pursuant to subsection (b)(2).

(C) Limit on grounds for objection.--No person may object to a restraining order under subparagraph (A) on any ground that is the subject of parallel litigation involving the same property that is pending in a foreign court.

28 U.S.C. § 2467(d)(3).

Three years ago, this Circuit read a previous version of section 2467(d)(3) to permit the issuance of restraining orders

"only *after* a foreign court has entered a forfeiture *judgment*." *In re Any and All Funds or Other Assets, in Brown Brothers Harriman & Co. Account #8870792 in the Name of Tiger Eye Investments Ltd., et al.* ("*Tiger Eye*"), 613 F.3d 1122, 1124 (D.C. Cir. 2010) (second emphasis added). But Congress has since amended the section, eliminating the requirement that property be subject to "a foreign forfeiture or confiscation judgment" prior to issuance of a restraining order. *See* Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 111-342, 124 Stat. 3607. *See generally* 156 CONG. REC. S8637-38 (daily ed. Dec. 8, 2010) (statement of Sen. Whitehouse). As the text makes clear, the Government now "may apply for, and the court may issue, a restraining order at any time before or after the initiation of forfeiture proceedings by a foreign nation." 28 U.S.C. § 2467(d)(3)(A)(i).

Pursuant to the current version of section 2467(d)(3), a federal court may issue a restraining order "[t]o preserve the availability of property subject to civil or criminal forfeiture under foreign law." 28 U.S.C. § 2467(d)(3)(A)(i). This authorization applies when "the United States has a treaty or other formal international agreement in effect providing for mutual forfeiture assistance," *id.* § 2467(a)(1), and when the property to be restrained represents the suspected proceeds of a "violation of foreign law that would constitute a violation or an offense for which property could be forfeited under Federal law if the offense were committed in the United States," *id.* § 2467(a)(2)(A). There is no dispute that both requirements are satisfied here.[3] In issuing such a restraining order, the court may

---

[3]*See supra* note 2 (regarding mutual assistance agreement); *In re Enforcement of a Restraining Order by the High Court*, Misc. Case No. 11-208, at 2 (D.D.C. Apr. 19, 2011) (finding by district court that "the conduct giving rise to forfeiture under the [Hong Kong] law constitutes conduct that would give rise to forfeiture under [U.S. law]

rely on an affidavit "describing the nature of the proceeding or investigation underway in the foreign country, and setting forth a reasonable basis to believe that the property to be restrained will be named in a judgment of forfeiture at the conclusion of such proceeding." *Id.* § 2467(d)(3)(B)(i). Alternatively, the court "may register and enforce a restraining order that has been issued by a court of competent jurisdiction in the foreign country and certified by the Attorney General" as "in the interest of justice." *Id*. § 2467(d)(3)(B)(ii), (b)(2). In this case, the district court registered and enforced the Hong Kong restraining order based on the Attorney General's certification. *See In re Enforcement of a Restraining Order by the High Court*, Misc. Case No. 11-208, at 2 (D.D.C. Apr. 19, 2011); DOJ Application, Exhibit 1 (Assistant Attorney General Decision (Apr. 14, 2011)).

Section 2467(d)(3)(A) further requires that a "restraining order under this subparagraph shall be issued in a manner consistent with" two sets of procedural prerequisites. 28 U.S.C. § 2467(d)(3)(A)(ii)(I).

First, the order must be "issued in a manner consistent with subparagraphs (A), (C), and (E) of paragraph (1)" of section 2467(d). *Id.* That paragraph directs entry of "such orders as may be necessary to enforce the judgment on behalf of a foreign nation *unless* the court finds that -- (A) the judgment was rendered under a system that provides tribunals or procedures incompatible with the requirements of due process of law; . . . (C) the foreign court lacked jurisdiction over the subject matter; . . . or (E) the judgment was obtained by fraud." *Id.* § 2467(d)(1) (emphasis added). The district court made the

---

if committed in the United States"); DOJ Application at 11-13 (describing offenses giving rise to forfeiture under 18 U.S.C. § 981(a)(1)(A), (C) and 28 U.S.C. § 2514).

appropriate contrary findings in this case. *See In re Enforcement of a Restraining Order by the High Court*, Misc. Case No. 11-208, at 2-3 (D.D.C. May 5, 2011); *In re Enforcement of a Restraining Order by the High Court*, Misc. Case No. 11-208, at 2-3 (D.D.C. Apr. 19, 2011). And Luan does not dispute them on appeal.

Second, the restraining order must be "issued in a manner consistent with . . . the procedural due process protections for a restraining order under section 983(j) of title 18." 28 U.S.C. § 2467(d)(3)(A)(ii)(I). The text adds that, for purposes of applying section 983(j), "references in such section 983(j) to civil forfeiture or the filing of a complaint shall be deemed to refer to the applicable foreign criminal or forfeiture proceedings." *Id.* § 2467(d)(3)(A)(ii)(II)(aa).

Accordingly, our attention must now turn to 18 U.S.C. § 983(j). That section authorizes three different kinds of restraining orders against property subject to civil forfeiture under U.S. civil forfeiture statutes. First, a federal court may issue a restraining order that lasts during the pendency of forfeiture proceedings, "upon the filing of a civil forfeiture complaint alleging that the property with respect to which the order is sought is subject to civil forfeiture." 18 U.S.C. § 983(j)(1)(A).[4] Second, a court may issue a 90-day restraining order prior to the filing of a civil forfeiture complaint after conducting an adversarial proceeding akin to a preliminary injunction hearing. *Id.* § 983(j)(1)(B); *see id.* § 983(j)(2)

---

[4]*See* Gov't Br. 17 (stating that restraining orders issued under section 983(j)(1)(A) last "during the pendency of forfeiture proceedings"); Luan Reply Br. 4 (same).

(permitting extensions for good cause).[5] Third, a court may issue a temporary restraining order of not more than 14 days without notice or hearing if there is probable cause to believe that the property is subject to forfeiture and that notice would jeopardize its availability. *Id.* § 983(j)(3).[6]

In sum, a court may issue restraining orders of progressively longer duration as the property's owner is accorded progressively greater procedural protections. Because the restraining order against Luan's property has lasted far longer than 90 days, both parties agree that it remains valid only if it was issued in a manner consistent with the procedural due process protections of section 983(j)(1)(A), the section authorizing restraining orders that last during the pendency of forfeiture proceedings. *See* Gov't Br. 32; Luan Br. 42-46.

III

Luan contends that the district court's order violated section 2467(d)(3) because it was not issued in a manner consistent with the procedural due process protections of section 983(j)(1)(A). Our review of the district court's statutory construction is *de novo*. *See Tiger Eye*, 613 F.3d at 1126. Our review of the

---

[5]*See also* 18 U.S.C. § 983(j)(1)(B) (requiring the court, before issuing a 90-day order, to determine that "there is a substantial probability that the United States will prevail on the issue of forfeiture," that "failure to enter the order will result in" dissipation of the property, and that "the need to preserve the availability of the property . . . outweighs the hardship on any party against whom the order is to be entered").

[6]*See* 18 U.S.C. § 983(j)(3) (requiring a hearing, if one is requested, "at the earliest possible time and prior to the expiration of the temporary order").

court's factual findings is for clear error.  *See United States v. Murdock*, 667 F.3d 1302, 1306 (D.C. Cir. 2012).

A

As noted above, section 983(j)(1)(A) provides that a court may enter a restraining order that lasts during the pendency of forfeiture proceedings, "*upon the filing of a civil forfeiture complaint* alleging that the property with respect to which the order is sought is subject to civil forfeiture."  18 U.S.C. § 983(j)(1)(A) (emphasis added).  In light of this wording, Luan insists that section 983(j)(1)(A) "can only be invoked following the filing of a civil forfeiture complaint."  Luan Br. 17; *see id.* at 35.  And because no civil forfeiture complaint against Luan's property was filed in Hong Kong, Luan maintains that the order the United States district court entered was not "issued in a manner consistent with . . . the procedural due process protections" of section 983(j)(1)(A).  28 U.S.C. § 2467(d)(3)(A)(ii)(I).

The flaw in this argument is that it ignores section 2467(d)(3)'s admonition that "references in such section 983(j) to civil forfeiture or the filing of a complaint shall be deemed to refer to the applicable foreign criminal or forfeiture proceedings."  *Id.* § 2467(d)(3)(A)(ii)(II)(aa).  It is thus clear that the filing of a foreign "civil forfeiture" "complaint" is not a prerequisite to issuance of a restraining order under section 2467(d)(3).

Indeed, were the filing of a civil forfeiture complaint required, section 2467(d)(3) would be a statute of extremely limited utility.  The government represents, and Luan does not dispute, that many foreign countries do not have civil forfeiture laws or otherwise permit forfeiture apart from criminal proceedings.  Gov't Br. 27; *see* Luan Reply Br. 14-15 & n.7.

Luan's own expert represents, and the government does not dispute, that forfeiture in Hong Kong is generally available only in criminal cases. Decl. of Donald Lewis ¶¶ 4-5; *see* Gov't Br. 27. Hence, if the statute required the filing of a foreign civil forfeiture complaint, it would be unavailable to assist Hong Kong and many other governments preserve property during the pendency of criminal proceedings, notwithstanding that both the statute and the 2010 legislative history cited by both parties make clear that this was the statutory purpose.[7]

Accordingly, the fact that the government of Hong Kong did not file a civil forfeiture complaint against Luan's property does not bar the issuance of a restraining order against it. Instead, following the statutory admonition, we must determine which (if any) Hong Kong proceedings constitute "the applicable foreign criminal or forfeiture proceedings" necessary

---

[7]*See* 28 U.S.C. § 2467(d)(3)(A)(i) (providing that the court may issue a restraining order "[t]o preserve the availability of property subject to . . . *criminal* forfeiture under foreign law" (emphasis added)); *id.* § 2467(d)(3)(A)(ii)(II)(aa) (providing that references to civil forfeiture in § 983(j) "shall be deemed to refer to the applicable foreign *criminal* or forfeiture proceedings" (emphasis added)); 156 CONG. REC. S8638 (daily ed. Dec. 8, 2010) (statement by Sen. Whitehouse that the 2010 amendments were necessary because, under the previous version of the statute, the government was unable to restrain money "that had been identified for forfeiture by foreign governments in connection with *criminal investigations and prosecutions*" (emphasis added)); 156 CONG. REC. H8540 (daily ed. Dec. 16, 2010) (statement by Rep. Poe that "[w]e must ensure that foreign governments can continue to rely on our assistance with their *criminal prosecutions*" (emphasis added)); Gov't Br. 23, 28 (citing legislative history); *see also* Luan Br. 20-21 (relying on legislative history). Senator Sheldon Whitehouse and Representative Ted Poe, along with Representative Judy Chu, were co-sponsors of the 2010 amendments.

to satisfy section 2467(d)(3) and its cross-reference to section 983(j).

B

Section 2467(d)(3) does not itself explain how to determine which proceedings constitute "the applicable foreign criminal or forfeiture proceedings." The Justice Department contends that those proceedings occur as soon as a foreign government "initiat[es] . . . criminal proceedings" against the owner of the assets that the U.S. government seeks to restrain. Gov't Br. 29. Under Hong Kong law, the Department says, the issuance of the warrant for Luan's arrest served that function. *See id.* at 32-33; Organized and Serious Crimes Ordinance, (2007) Cap. 455, 4, § 2(15) (H.K.) ("Proceedings for an offense are instituted . . . when a magistrate issues a warrant or summons . . . in respect of the offence[.]"). The Justice Department does not spell out the rationale for this construction. Apparently it reads section 2467(d)(3) as instructing courts to "replace[]" the words "civil forfeiture" wherever they appear in section 983(j) with the words "foreign criminal or forfeiture proceedings." Gov't Br. 25. On this reading, section 2467(d)(3) authorizes "a restraining order of unspecified duration" upon "the filing of" -- that is, the initiation of -- a "foreign criminal or forfeiture proceeding." *Id.* at 24.

The problem with making the direct substitution the Justice Department suggests is that section 2467(d)(3) does not merely say that "the filing of a complaint shall be deemed to refer" to "foreign criminal or forfeiture proceedings." 28 U.S.C. § 2467(d)(3)(A)(ii)(II)(aa). Rather, it states that the filing of a complaint shall be deemed to refer to "the *applicable* foreign criminal or forfeiture proceedings." *Id*. (emphasis added). This is not to say that the issuance of a warrant is not the "applicable"

proceeding, but an argument based on substitution alone does not resolve the question.

Another way to construe the relevant portion of section 2467(d)(3), although proposed by neither party, might begin by noting that section 983(j) authorizes restraining orders of three different durations. A court might then find the "applicable" foreign criminal proceeding by identifying the foreign proceeding that authorizes the kind of order entered in this case -- namely, an order that lasts during the pendency of forfeiture proceedings.[8] Hong Kong law does in fact define such a proceeding. *See* Organized and Serious Crimes Ordinance, (2003) Cap. 455, 20, § 14(1) (H.K.) (authorizing restraining orders against defendants for whom "proceedings have been instituted" and "have not . . . been concluded"). Indeed, there is no doubt that there was such a proceeding in this case because the Hong Kong High Court issued an order lasting for the pendency of the proceedings against Luan, which the U.S. district court then registered and enforced. *See In re Male Luan Gang et al.*, [Aug. 15, 2011] Misc. Proceeding No. 409, at 2 (C.F.I.) (H.K.) (J.A. 127) (extending restraining order "until a further Order of the Court"). Hence, if all that is necessary is to identify the kind of Hong Kong proceeding that authorizes a restraining order lasting for the pendency of proceedings in that jurisdiction, we need look no further.

A third possible construction, which Luan presses in the event that we reject his contention that the filing of an actual civil forfeiture complaint is required, is that the word

---

[8]It is important to reiterate that the statutory authorization for U.S. restraining orders applies only if the foreign nation is one "with which the United States has a treaty or other formal international agreement in effect providing for mutual forfeiture assistance." 28 U.S.C. § 2467(a)(1).

"applicable" directs us to identify the foreign proceeding that is the "functional equivalent" of the filing of a civil forfeiture complaint. Luan Br. 36. Luan cites nothing to support the contention that section 2467(d)(3) requires that a foreign proceeding be the "functional equivalent" of the filing of an American civil forfeiture complaint in order to be deemed "applicable." Nor does he flesh out what he means by "functional equivalent."[9] There is, however, support for the contention that the prerequisite for a restraining order that lasts during the pendency of foreign forfeiture proceedings should be procedural protections that are "analogous" or "similar" to those afforded by the filing of a civil forfeiture complaint. *See* 156 CONG. REC. S8638 (daily ed. Dec. 8, 2010) (statement by Sen. Whitehouse that the bill to amend section 2467 "includes due process protections *analogous* to those used for restraining orders in anticipation of domestic forfeiture judgments" (emphasis added)); 156 CONG. REC. H8540 (daily ed. Dec. 16, 2010) (statement by Rep. Chu that the bill "includes due process protections *similar* to those used for restraining orders in anticipation of domestic forfeiture judgments" (emphasis added)); *see also* Gov't Br. 23 (citing this history). Perhaps the best descriptor is simply the one employed by the statute itself: the prerequisite for such a restraining order should be procedural

---

[9]In his reply brief and at oral argument, Luan's counsel contended that the only foreign criminal proceeding that could be the functional equivalent of the filing of a civil forfeiture complaint would be the filing of an "indictment or comparable charging document." Luan Reply Br. 3; *see* Oral Arg. Recording at 28:45 - 29:10. There is no statutory support for this contention; section 2467(d)(3) does not use the term "indictment," but rather the phrase "applicable foreign criminal or forfeiture proceedings." 28 U.S.C. § 2467(d)(3)(A)(ii)(II)(aa). Moreover, as we explain below, Luan received all of the procedural protections (and more) that would have been afforded by the filing of a "civil forfeiture . . . complaint," which is the language the statute does use, *id.*

protections "consistent with" those afforded by the filing of a civil forfeiture complaint. *See* 28 U.S.C. § 2467(d)(3)(A)(ii)(I) (requiring that a "restraining order under this subparagraph shall be issued in a manner *consistent with* . . . the procedural due process protections for a restraining order under section 983(j)" (emphasis added)).

We need not decide precisely which of these three constructions of section 2467(d)(3) is correct. In this case, the Hong Kong proceedings included an application for and issuance of an arrest warrant, an application for and issuance of a restraining order, and a subsequent adversarial hearing to determine whether to continue that restraining order. For the reasons discussed in the following subpart, we conclude that -- taken together -- those proceedings provided procedural due process protections consistent with those that the filing of an American civil forfeiture complaint would have afforded Luan. Accordingly, even under the most demanding plausible interpretation of section 2467(d)(3), the Hong Kong restraining order satisfied the prerequisites for enforcement.

C

In order to determine whether Luan received procedural due process protections "consistent with" those afforded by the filing of a civil forfeiture complaint, we begin by cataloguing the procedural protections that a civil forfeiture complaint provides in the United States.[10] Rule G of the Supplemental Rules for

---

[10]By including this catalogue, we do not mean to suggest that a "manner consistent with . . . the procedural due process protections for a restraining order under section 983(j)" requires a foreign analogue for every particular of the federal pleading rules that we discuss below. Even if that degree of congruity were required, however, nothing in the record suggests the proceedings against Luan were

Admiralty or Maritime Claims and Asset Forfeiture Actions "governs a forfeiture action in rem arising from a federal statute." SUPP. R. G(1). That rule requires (inter alia) that notice be provided to known potential claimants, *id.* G(4)(b), and further requires that the complaint:

> (a) be verified;

> (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;

> (c) describe the property with reasonable particularity;

> (d) if the property is tangible, state its location when any seizure occurred and -- if different -- its location when the action is filed;

> (e) identify the statute under which the forfeiture action is brought; and

> (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

*Id.* G(2). Supplemental Rule E, which applies to "the extent that [Rule G] does not address an issue," *id.* G(1), provides that the complaint "shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *Id.* E(2)(a). Section 983(j)(1)(A) itself provides that, in order to serve as the basis for a restraining

---

deficient in any of those respects.

order, a civil forfeiture complaint must "alleg[e] that the property with respect to which the order is sought is subject to civil forfeiture." 18 U.S.C. § 983(j)(1)(A). Finally, the filing of a civil forfeiture complaint commences adversarial proceedings of finite (although not necessarily brief) duration, during which a person who asserts an interest in the property may contest the forfeiture. SUPP. R. G(5).[11]

Luan does not dispute that the Hong Kong proceedings collectively gave him many of the same procedural protections that a U.S. civil forfeiture complaint would provide.[12] But he maintains that there were still other important protections that he did not receive.

First, Luan suggests that the Hong Kong proceedings failed to describe the property to be forfeited with reasonable particularity, as required by Supplemental Rule G(2)(C). That is simply incorrect. In their application for a restraining order against Luan, Hong Kong authorities enumerated $23.7 million in suspected criminal proceeds that they sought to restrain. Chow Aff. ¶¶ 8-14. They further identified specific U.S. bank accounts to which the funds had been sent. *See id.* ¶¶ 11-12. So, too, did the restraining order issued by the Hong Kong court.

---

[11]*See* Gov't Br. 24 ("The point of allowing a restraining order of unspecified duration upon the filing of *some* proceeding . . . is that the party affected by the restraining order has a forum in which to challenge the restraint.").

[12]Luan does not dispute: that he received notice of the restraining order proceedings; that the Hong Kong inspector's affirmation in support of a restraining order was effectively verified; that the Hong Kong pleadings stated the grounds for jurisdiction and venue in Hong Kong; or that the pleadings identified the statute under which the forfeiture action was brought. See SUPP. R. G(2)(a), (b), (c), (e); *id.* G(4)(b).

*See In re Male Luan Gang et al.*, [Mar. 15, 2011] Misc. Proceeding No. 409, at 3-6 (C.F.I.) (H.K.) (J.A. 59-62). Under Hong Kong law, those criminal proceeds were the assets that would be subject to forfeiture upon Luan's conviction. *See* Organized and Serious Crimes Ordinance, (2003) Cap. 455, 12, § 8(6)-(7) (H.K.).[13]

Second, Luan maintains that the proceedings failed to allege "sufficiently detailed" facts to support a reasonable belief that his property is subject to forfeiture, as required by Supplemental Rules E(2)(a) and G(2)(f). *See United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002) (explaining pleading standard).[14] This claim is also incorrect. The affirmation of the Hong Kong customs inspector made numerous particularized allegations, describing in detail the unlawful transactions in which Luan engaged, the bank accounts into which he deposited the proceeds, and the incriminating manner in which he transferred $23.7 million from those bank accounts to the United States. *See supra* Part I; Chow Aff. ¶¶ 3-5; *id.* ¶¶ 6-12 (describing financial transactions and listing specific bank accounts). The order of the Hong Kong court continuing the restraining order added further particulars. *In re Male Luan Gang et al.*, [Mar.

---

[13]Thus, the Hong Kong application also satisfied section 983(j)(1)(A)'s requirement that the complaint "alleg[e] that the property with respect to which the order is sought is subject to civil forfeiture." 18 U.S.C. § 983(j)(1)(A); *see* DOJ Application at 2-4 (noting that the $23.7 million restrained by the district court constituted "suspected criminal proceeds" that would be subject to forfeiture upon Luan's conviction); Chow Aff. ¶ 37 (estimating that the criminal proceeds were more than three times the total assets that were restrained).

[14]*See* SUPP R. G, Advisory Committee Note, Subdivision (2) (explaining that Supplemental Rule G(2)(f) was intended to codify the interpretation of Rule E(2)(a) set out in *Mondragon*).

15, 2011] Misc. Proceeding No. 409, at 3-6 (C.F.I.) (H.K.) (J.A. 59-62). These allegations were sufficiently "particularized" to satisfy Luan's only objection regarding compliance with Supplemental Rules E(2)(a) and G(2)(f).

Moreover, the Hong Kong proceedings, which culminated in the issuance and continuation of the restraining order, offered additional procedural protections in this respect that the mere filing of a civil forfeiture complaint in the U.S. would not. No judicial approval of any kind is required before the government may file such a complaint in the United States. *See* Oral Arg. Recording at 10:40 - 11:00 (acknowledgment by Luan's counsel). And while presumably no approval is required for a customs inspector to file an affirmation in Hong Kong either, there was more here: namely, the issuance of both an arrest warrant and a restraining order. In order to secure the arrest warrant, Hong Kong authorities were required to present evidence to a magistrate, under oath, that Luan had committed an indictable offense. *See* Magistrates Ordinance, (1997) Cap. 227, 8, 29-30, §§ 10, 72, 75 (H.K.). And in order to secure a restraining order, the Hong Kong government had to show (and the court had to find) that there was "reasonable cause to believe that [the defendant] has benefited from that specified offence." Organized and Serious Crimes Ordinance, (2003) Cap. 455, 20, § 14(2)(b) (H.K.).

Third, Luan objects that the Hong Kong proceedings, unlike the filing of a civil forfeiture complaint, were not "adversary proceeding[s]." Oral Arg. Recording at 6:43-57. As Luan's counsel concedes, however, the filing of a civil forfeiture complaint is not *itself* an adversary proceeding. Rather, it "*begins* adversary proceedings" of "finite duration," in the sense that they end when the court resolves the complaint. *Id.* at 11:28-48.

But the same is true in Hong Kong. The proceedings against Luan set in motion multiple adversarial proceedings in which he will be able to contest the prospect of forfeiture. The issuance of an arrest warrant began criminal proceedings under Hong Kong law. *See* Organized and Serious Crimes Ordinance, (2007) Cap. 455, 4, § 2(15)(a) (H.K.). As a consequence, Hong Kong courts now must hold a preliminary inquiry, in which Luan will be able to challenge the government's evidence; as well as a criminal trial, in which Luan will be entitled to the presumption of innocence. *See* Magistrates Ordinance, (1997) Cap. 227, 33, § 81 (H.K.) (requiring adversarial preliminary inquiry); *id.* at 36, § 85 (requiring either discharge or committal for trial after preliminary hearing); Bill of Rights Ordinance, (1997) Cap. 383, 5, § 8 Art. 11(1) (H.K.) (establishing presumption of innocence).

All of these proceedings are finite. If they are not instituted within a reasonable time, or if Luan is acquitted, the Court of First Inquiry must discharge the restraining order against Luan. *See* Organized and Serious Crimes Ordinance, (2003) Cap. 455, 20-21, § 14(1), (4). Moreover, Hong Kong law requires the court to regularly consider whether to extend or discharge an extant restraining order. *Id.* at 20, § 14(1A)-(2); *see In re Male Luan Gang et al.*, [Aug. 15, 2011] Misc. Proceeding No. 409 (C.F.I.) (H.K.) (J.A. 127). And, of course, if the Hong Kong restraining order is discharged, the U.S. restraining order must be discharged as well. *See* 28 U.S.C. § 2467(d)(3)(A)(i) (authorizing restraining orders to preserve the availability of property *subject to* . . . forfeiture under foreign law" (emphasis added)); DOJ Application at 8 (stating that U.S. restraining orders are available under section 2467(d)(3) only "during the pendency" of foreign forfeiture actions). That Luan has delayed, or failed to take advantage of, these proceedings by fleeing arrest does not diminish the procedural protections they afford him.

Moreover, Luan has already been given the opportunity to challenge his restraint in an adversarial hearing. As noted above, the Hong Kong Court of First Instance notified Luan that he could request a hearing in which to argue that the restraining order against him should be discharged. *See In re Male Luan Gang et al.*, [Mar. 15, 2011] Misc. Proceeding No. 409, at 10 (C.F.I.) (H.K.) (J.A. 66). The court subsequently held such a hearing, during which it heard argument from one of his alleged co-conspirators before concluding that discharge was unwarranted. *See In re Male Luan Gang et al.*, [Aug. 15, 2011] Misc. Proceeding No. 409, at 2 (C.F.I.) (H.K.) (J.A. 127). Luan could have appeared at that proceeding and argued that the evidence against him was insufficient. *See* Organized and Serious Crimes Ordinance, (2003) Cap. 455, 20, § 14(2)(b) (H.K.); *Sec'y for Justice v. Wu Lihui & Ors.*, [2008] H.K.C. 1446 (C.A.) (H.K.) (decision by the Court of Appeal of the High Court of Hong Kong discharging a restraining order because it was "based entirely on speculation"). Again, his failure to take advantage of that proceeding does not alter the protections it afforded.

Finally, Luan observes that the Hong Kong court issued an *in personam* order restraining him (and his co-defendants) from dealing with assets that he owned or controlled. He argues that an *in personam* order cannot supply procedural due process protections consistent with section 983(j) because that section authorizes only *in rem* orders restraining specific property. Luan Br. 40-42.[15] As Luan notes, a civil forfeiture complaint filed under Supplemental Rule G(2)(b) must state the grounds for "in rem jurisdiction." SUPP. R. G(2)(b). And because the

---

[15]*In personam* jurisdiction is jurisdiction over the defendant. *In rem* jurisdiction is jurisdiction over the property. *See United States v. Bajakajian*, 524 U.S. 321, 330-34 (1998); *United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007).

Hong Kong government did not seek, let alone state the grounds for, *in rem* jurisdiction of Luan's property, Luan contends that "no document meeting the substantive requirements of a civil forfeiture complaint was entered in the Hong Kong proceedings." Luan Br. 41-42.

Criminal forfeiture (at least in the United States) is *in personam. See Alexander v. United States*, 509 U.S. 544, 558 (1993); *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 363 (1983) ("In contrast to the *in personam* nature of criminal actions, actions *in rem* have traditionally been viewed as civil proceedings . . . ."). Moreover, as noted above, many countries do not have provisions for civil forfeiture at all. *See supra* Part III.A. Accordingly, Luan's insistence that the forfeiture order must be *in rem* essentially restates his contention -- which we have rejected above -- that section 2467(d)(3) can only be invoked following the filing of a civil forfeiture complaint. As we have explained, that argument ignores section 2467(d)(3)'s admonition that "references in such section 983(j) to civil forfeiture or the filing of a complaint shall be deemed to refer to the applicable foreign *criminal or* forfeiture proceedings." 28 U.S.C. § 2467(d)(3)(A)(ii)(II)(aa) (emphasis added). Likewise, Luan's contention that the legislative history of section 2467(d)(3) "supports the conclusion that Congress intended the statute to apply to civil *in rem* forfeiture," Luan Br. 41 n.3, is unsupported by that history, which makes clear that section 2467(d)(3) was intended to permit foreign governments to preserve property during the pendency of criminal proceedings, *see supra* note 7.

In a footnote, Luan contends that the "plain language" of section 2647(d)(3) makes clear that the statute was intended to permit only *in rem* restraints. Luan Br. 41 n.3. The language he cites states that the court may enter a restraining order "[t]o preserve the availability of *property* . . . ." *Id.* (quoting

§ 2647(d)(3)(A)(i)) (emphasis added by appellant). The problem for Luan is that the U.S. statute governing many criminal forfeitures contains exactly the same language, *see* 21 U.S.C. § 853(e)(1), and yet there is no doubt that the latter authorizes *in personam* orders, *see United States v. Price*, 914 F.2d 1507, 1512 (D.C. Cir. 1990) (stating that 21 U.S.C. § 853 authorizes "*in personam* criminal forfeiture proceedings").

Other than objecting that section 983(j) does not itself authorize *in rem* orders, Luan makes no argument that an *in personam* order is not *consistent with* the procedural due process protections for restraining orders under that section. Because that is what he must show to render a section 2467(d)(3) order invalid, *see* 28 U.S.C. § 2467(d)(3)(A)(ii)(I), this claimed deficiency in the Hong Kong proceedings -- like the others he asserts -- does not warrant reversal of the district court's order.

D

In sum, we conclude that the district court's restraining order was "issued in a manner consistent with . . . the procedural due process protections" of section 983(j)(1)(A), because the "applicable foreign criminal or forfeiture proceedings" in this case afforded protections consistent with those afforded by the filing of a civil forfeiture complaint in the United States. 28 U.S.C. § 2467(d)(3)(A)(ii)(I), (II)(aa). We need not decide whether all of those proceedings were required, or whether fewer or different proceedings would have sufficed. We decide only that the proceedings that Luan was afforded were sufficient to satisfy the mandate of section 2467(d)(3).

26

IV

For the foregoing reasons, the district court's order denying Luan's motion to dissolve the restraining order is

*Affirmed.*